UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

URBAN ASSOCIATES, INC.,

                                        Plaintiff,

                                                        CIVIL CASE NO. 04-40059

v.

STANDEX ELECTRONICS, INC., et al.,                      HONORABLE PAUL V. GADOLA
                                                        U.S. DISTRICT COURT
                                        Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants' motion for summary judgment, filed on August 12, 2005. For the following reasons, the Court grants the motion.

I.      **Background**

Plaintiff Urban Associates is the successor in interest to R.P. Urban & Associates. R.P. Urban & Associates was an independent sales representative, who sold electronic components primarily to the automotive industry. Defendant Standex Electronics, Inc. ("Standex") is a manufacturer of electronic components and assemblies for the automotive, communication and medical industries. Standex is the wholly own subsidiary of Defendant Standex International Corporation.

Standex manufactures engineered parts, or custom parts, a business which requires a great deal of effort before the final product reaches the customer. First, the customer would send the specifications of its desired part to Standex with a request for a quotation. Standex would then proceed to design and engineer the part in an effort to determine what it should quote to the

customer as its production price.  If Standex's bid was accepted by the customer, then manufacturing would commence in earnest.  This would include manufacturing the tooling, otherwise known as molds or presses, necessary to properly manufacture the part and could even include the creation of prototypes and pre-production approval steps. Once the design was finalized and the manufacturing equipment was set up to produce the part, Standex would wait for specific instructions from the customer as to how many parts it should produce and when they should be delivered.  The time between the development of a customer's request for a quotation and Standex's actual shipment of parts could be anywhere from six months to a year.  When a customer was certain that it was going to buy parts from Standex, it would issue a blanket purchase order.  A blanket purchase order specifies the possible quantity requirements for a given part, anywhere from a thousand to multiple millions, the prices for various quantities of that part, and other terms.  A blanket purchase order does not oblige Standex to manufacture or ship any parts.  That obligation arises when a customer issues what is known as a  shipment, production, or release order that would issue against the blanket purchase order.  Blanket purchase orders can last for some time, while shipment orders are issued against them, though Standex's purchase orders did not last longer than one year.  If a customer wished to purchase more of the same part from an expired purchase order, the customer would issue another purchase order and subsequent shipment orders against it.  *See, generally*, Mot., Exs. B & L and Resp., Ex 3.

Before 2003, Standex utilized sales representatives to make the initial contact with potential customers and solicit requests for quotations from them.  Sales representatives were primarily responsible for developing the customer's request for quotation.  During the development of the

2

quotation request, a sales representative would bear his own expenses and was not entitled to any commissions until a product was shipped to a customer.  The commission thus due were dependant on the quantity of the product actually shipped to the customer.

In 1990, R.P. Urban & Associates, Plaintiff's predecessor, entered into a sales representation agreement ("the Agreement") with Standex.  Plaintiff later succeeded to the interest in the Agreement when it acquired R.P. Urban & Associates and assumed the representation of Standex under the terms of the Agreement.  The agreement was relatively straightforward, comprised of only seventeen numbered paragraphs, including the following:

4.    AUTHORITY.  The Representative shall be the agent of the Company for the sole purpose of soliciting and receiving orders for the Products in accordance with the then current prices, terms, product representations and warranties of the Company.   . . .

7.    COMMISSIONS.  Subject to the provisions of Section 8, a commission of 5% shall be paid by the Company to the Representative, as his sole compensation hereunder, on the net sales value (invoice value less cash discounts, taxes, freight charges, transportation insurance, cancellations, returns, allowances and similar items) of shipments of Products made by the Company into the Territory as long as this agreement is in effect.   . . .

10.    TERMINATION.  This Agreement may be terminated, with or without cause, by either party.

If terminated by the Company, at least 60 days' prior written notice by certified or registered mail shall be given to the Representative.  Such notice may be given at any time during any month or year and the termination date shall be 60 days from the date of the notice is received by the representative.

Upon termination by the Company, commissions shall be paid on all orders booked by the Representative and received by the Company in house prior to and including the termination date.  No commissions shall be paid to the representative for orders booked by the Representative and/or received by the Company after the termination date.   . . .

3

Mot., Ex. C at 2-4.  The Agreement contained a choice of law clause, selecting Standex's principle place of business, Ohio, as the governing law.  *Id*., ¶ 12.  The Agreement also contained an integration clause.  *Id*., ¶ 13.  There were written amendments to the Agreement but they did not alter the terms quoted above, aside from providing alternative commission rates for various products. *See* Mot., Ex. B at 10-12, 19-21, 30-32; *see also* Mot., Ex. D & E.

In July of 2002, Standex's general manager, James Anderson, decided to terminate the Agreement.  He wished to eliminate the sales representative from the equation, and use employees as salesmen instead.  Mot., Ex B at 54-55.  After making this decision, Mr. Anderson contacted Denise Falzone, Plaintiff's employee currently assigned to Standex to act as its sales representative, to inquire if she wished to work directly for Standex.  Mr. Anderson sent a written notice of termination to Plaintiff on November 15, 2002 with an effective date of termination of January 14, 2003.  Before Plaintiff received the notice, however, Ms. Falzone notified Plaintiff of her intention to leave Plaintiff's employment.  She then began working for Standex, servicing the same customers she serviced while working for Plaintiff.  Standex paid Plaintiff all commissions owed to Plaintiff for the shipment orders "booked" by Plaintiff and received by Standex up to and including the date of termination of the Agreement, January 14, 2003.  Mot., Ex. G.

Plaintiff filed its complaint against Defendants on February 20, 2004 alleging four counts. Count I alleges that Defendants breached the Agreement by terminating the agreement and not paying commissions due under the Agreement.  Plaintiff argues that the Agreement provided for commissions on more than just products shipped pursuant to shipment or production orders. Plaintiff contends that the Agreement provided for commissions on shipments made pursuant to

4

purchase orders and even subsequent purchase orders on parts covered in expired purchase orders, a practice known in the industry as paying commission on a "life of the part" basis. If this is so, then Plaintiff would be entitled to commissions past the date of the Agreement's termination. Count I also alleges that Defendants terminated the Agreement in bad faith in an effort to avoid paying commissions due to Plaintiff. Count II alleges, in the alternative, that, if an express contract is not found to exist, Defendants have been unjustly enriched and therefore the doctrines of unjust enrichment, or *quantum meruit*, and procuring cause apply. Count III alleges that Standex tortiously interfered with Plaintiff's contractual or business relationship with Ms. Falzone by inducing her to leave her employment with Plaintiff and work directly for Standex. Count IV requests declaratory relief regarding Counts II & III in the form of a declaration of a continuing obligation.

## II.    Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992); *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984); *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217

5

(E.D. Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991).

**III.    Analysis**

    **A.    Count I**

Defendants argue that they are entitled to summary judgment on Count I because the Agreement clearly states that Plaintiff is due commissions only for "orders booked" by Plaintiff and received by Standex "prior to and including the termination date." Mot., Ex. C at ¶ 10. Defendants claim that the term "orders booked" unambiguously refers to shipment orders together with the terms included in the blanket purchase orders against which the shipment orders are issued. Plaintiff is not due commissions on the shipment of products according to shipment orders made after the termination date but issued pursuant to blanket purchase orders received, or business awarded, before the termination date. Furthermore, Defendants maintain that they were under no duty of good faith such that they could not terminate the sales agreement without cause. Plaintiff, on the other hand, argues that there is a question of fact as to the meaning of the term "orders booked," which the Agreement does not define, and therefore summary judgment is inappropriate. Plaintiff also argues that there exists a duty of good faith within agency contracts that can be terminated without cause. The Court agrees with Defendants.

Because of the Agreement's choice of law provision, Ohio law controls its interpretation. *See Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 528 (1995); *Banek, Inc. v. Yogurt Ventures U.S.A.*, 6 F.3d 357, 361 (6th Cir. 1993). Under Ohio law, the question as to whether a contract term is ambiguous, thus creating the possibility of an factual issue, is a matter of law. *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 683-84 (6th Cir. 2000).

Extrinsic evidence can be examined to determine if an ambiguity exists. *Id.* at 684, n.12. "Ambiguity exists only where a term cannot be determined from the four corners of the agreement or where contract language is susceptible to two or more reasonable interpretations." *Potti v. Duramed Pharmaceuticals, Inc.*, 938 F.2d 641, 647 (6th Cir. 1991).

Here, the term "orders booked" is not susceptible to two or more reasonable interpretations. It is unreasonable to assume that Plaintiff would be due commissions on "orders" that would not create an enforceable obligation on the part of the customer to purchase the products ordered. *See Hudson vs. Tektronix, Inc*, 1982 Ohio App. LEXIS 12909 (Ohio Ct. App. 1982) (unpublished); *Chicago Fineblanking Corp. v. D.J. Cotter & Co.*, 1996 U.S. Dist. LEXIS 21882 (E.D. Mich. 1996) (unpublished). Plaintiff seems to argue that the Agreement vests commissions through a blanket purchase order, which commissions later become due when a shipment order is made by the customer. This interpretation, however, is not supported the Agreement. The Agreement only provides for the payment of commissions "on the net sales value . . . of shipments of Products made by the Company into the Territory *as long as this agreement is in effect*." Mot., Ex. C, ¶ 7 (emphasis added). The agreement does not provide for commission on a "life of the part" basis because commissions are not paid on shipments made after termination of the Agreement. Neither is the interpretation supported by extrinsic evidence. Mot., Ex. B at 16; Resp., Ex. 2 at 56, 72, 77-78, 80; Mot., Ex. G at 2-3.

Defendants owed commissions to Plaintiff for the "orders booked" that resulted in the obligation on the part of the customer to purchase the product so ordered. That obligation arose through the a customer's shipment or release order, which, when combined with the terms of the

7

blanket purchase order against which it was made, would determine the obligations of the contracting parties and the commissions due Plaintiff.  Defendants have paid Plaintiff all the commissions due  in this manner and are therefore entitled to summary judgment on this claim.

Defendants are also entitled to summary judgment on Plaintiff's claim that Defendants' ability to terminate the Agreement was limited by a duty to exercise good faith.  Plaintiff relies on the case of *Davis & Tatera, Inc. v. Gray-Syracuse, Inc.*, 796 F. Supp. 1078 (D. Ohio 1992), which held that "'where a principal has the right to terminate the authority of an agent at any time, such principal may not do so in bad faith as a device to escape the payment of a broker's commission.'" *Davis & Tatera, Inc. v. Gray-Syracuse, Inc.*, 796 F. Supp. 1078, 1087 (S.D. Ohio 1992) (quoting *Randolph v. New England Mut. Life Ins. Co.*, 526 F.2d 1383, 1387 (6th Cir. 1975)).  Were the Court to hold likewise, despite what may be contrary authority from the Ohio Supreme Court, *Hamilton Ins. Servs. v. Nationwide Ins. Cos.*, 86 Ohio St. 3d 270 (1999) (a court may not construe an implied covenant that a contract is only terminable for cause, when the contract expressly states that it is terminable without cause), Plaintiff's claim would still fail.  The duty of good faith found by *Davis*, does not prevent Standex from terminating the agreement to prevent paying commissions which Plaintiff has not yet earned but might earn if Standex were to decide to continue to utilize Plaintiff's services:

> In no manner, however, can it be deemed bad faith for the Defendant to have terminated the relationship between the parties in an effort to cut off commissions for orders which had not yet been placed and for which the Plaintiff had expended no effort. As a matter of law, the Plaintiff is not entitled to commissions on such future orders as it cannot be said that the decision of [the defendant] to terminate the relationship in an effort to escape payment of those commissions is anything but sound business judgment.

8

*Davis*, 796 F. Supp. at 1088 n.7.  It is not bad faith to exercise the right to avoid paying future commissions by no longer relying on sales representatives.  Neither is it bad faith to terminate the agreement when Plaintiff has expended effort to develop business but will not receive commissions on that business because he has not yet "booked" orders for it.  These are rights provided by the contract.  *C.f.* Resp., Ex. 2 at 78-79.  Standex did not suddenly terminate the contract just before Plaintiff's commissions were to vest.  Standex gave Plaintiff 60 days' notice prior to termination.

### B.      Count II

Defendants are entitled to summary judgment on Count II as well.  There is no dispute that there existed a contract between Plaintiff and Defendants while Plaintiff was representing Standex. The existence of that contract precludes Plaintiff from bring a claim for unjust enrichment.  *Barber v. SMH (US)*, 202 Mich. App. 366, 375 (1993).  Moreover, because Plaintiff admits the existence of the contract, Plaintiff is precluded from pleading alternative facts to the contrary. *See Convergent Group Corp. v. County of Kent*, 266 F. Supp. 2d 647, 661 (W.D. Mich. 2003).  Furthermore, Plaintiff is not entitled to recovery of any post termination commissions under the procuring cause doctrine because the Agreement expressly addressed the availability of post-termination commissions.  *See Chase v. Matsu Mfg.*, 147 Fed. Appx. 507, 513 (6th Cir. 2005) (relying on *Fernandez v. Powerquest Boats*, 798 F. Supp. 458, 461-62 (W.D. Mich. 1992) ("[T]he procuring cause doctrine protects acquisition of orders, not acquisition of customers.").  *See also Davis*, 796 F. Supp. at 1084.

### C.      Count III

Defendants are entitled to summary judgment on Count III.  Plaintiff is correct that Michigan

law provides a cause of action for tortious interference with a contract even though the contract at issue is an employee's at-will employment contract, such as is the case with Ms. Falzone. *See Health Call v. Atrium Home & Health Care Servs.*, 268 Mich. App. 83 (2005). Nevertheless, Plaintiff has not suffered any damages as a result of Standex's inducement of Ms. Falzone to leave Plaintiff. The only client that Plaintiff lost in connection with Standex's actions was Standex, Mot., Ex. B at 13, and it is clear that Standex terminated its agreement with Plaintiff because it wanted to cease relying on sales representatives. Plaintiff would have lost Standex as a client even if Ms. Falzone had decided not to leave Plaintiff's employment.

### D. Count IV

Finally, Defendants are entitled to summary judgment on Count IV because the counts upon which the requested declaratory relief are predicated have been dismissed.

## IV. Conclusion

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [docket entry 22] is **GRANTED** and this action, no. 04-40059, is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

Dated:   January 30, 2006                         s/Paul V. Gadola
                                                  HONORABLE PAUL V. GADOLA
                                                  UNITED STATES DISTRICT JUDGE

10

Certificate of Service

I hereby certify that on  January 31, 2006  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
                    Michael J. Barton; Victoria A. Valentine                    , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: _____.


s/Ruth A. Brissaud_____
Ruth A. Brissaud, Case Manager
(810) 341-7845

11