UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

URBAN ASSOCIATES, INC.,
a Michigan corporation,

        Plaintiff,                Case No.  4:04-cv-40059-PVG-VMM

-vs-                         Hon.  Mark A. Goldsmith

STANDEX ELECTRONICS, INC.
a Delaware corporation, and  STANDEX
INTERNATIONAL CORP., a Delaware
corporation, jointly and severally,

        Defendants.

---

Stephen K. Valentine, Jr. (P21697)
Victoria A. Valentine (P58546)
VALENTINE & ASSOCIATES, P.C.
Attorneys for Plaintiff
5767 West Maple Road, Ste. 400
West Bloomfield, MI 48322
(284) 851-3010 / (248) 851-1553 fax
*valulaw@ameritech.net*
*vav@ameritech.net*

Michael J. Barton (P34509)
PLUNKETT COONEY
Attorney for Defendants
38505 Woodward Ave., Ste.  2000
Bloomfield Hills, MI 48304
(248) 901-4070
*mbarton@plunkettcooney.com*

---

**URBAN ASSOCIATES, INC.'S MOTION TO VACATE OPINIONS/ORDERS AND THE APRIL 14, 2011 "FINAL AWARD" ISSUED BY THE MAJORITY ARBITRATORS**

---

### CONCURRENCE

Pursuant to Local Rule 7.1(a), on June 24 and June 30 2011, Victoria A. Valentine

contacted Defendant's counsel, Michael Barton, to determine whether Defendant would concur

with or oppose the instant motion.  Defendant's counsel did not concur and the relief sought in

said motion was not obtained.

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

## MOTION

NOW COMES Plaintiff, Urban Associates, Inc., by and through its attorneys, Valentine & Associates, P.C., and, pursuant to 9 U.S.C. §10, moves this Honorable Court to Vacate the Opinions/Order and the 4/14/11 "Final Award" issued by the Majority Arbitrators (Marjority) and in support thereof states as follows:

1.      The Federal Arbitration Act (FAA) (9 U.S.C. §§1-14) provides for the vacation of an award under certain circumstances.

2.      The relevant portions of FAA §10 states:

Section 10. Same; vacation; grounds; rehearing.

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration –

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the  arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(b) If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators. (9 U.S.C. §10).

LAW OFFICES

VALENTINE & ASSOCIATES, P.C.

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

3.      The terms of the Stipulated Order for Arbitration provides that the arbitrators are to be bound under the law of the case doctrine, by the Court of Appeals opinion in this case, and by the recommendation of the Magistrate Judge denying Urban's motion for summary judgment. (*See*, Ex. 6: Stipulated Order for Arbitration attached to the accompanying brief in support).

4.      The Majority:

(I)      *failed to abide by the law of the case;*

(II)     *were guilty of misconduct by depriving Urban of a fundamentally fair hearing.*

(III)    *exceeded their powers and/or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made;*

(IV)     *acted with a manifest disregard of the law;*

(V)      *failed to render an award in conformity with the evidence presented in the hearing;*

(VI)     *refused to hear evidence pertinent and material to the controversy; and*

(VII)    *exhibited evident partiality.*

Pursuant to 9 U.S.C. §10 and based on the facts and law contained in the accompanying Brief in Support of Motion to Vacate Opinions/Order and 4/14/11 "Final Award" Issued by the Majority Arbitrators, this Honorable Court should vacate the Opinions/Orders and the 4/14/11 "Final Award" issued by the Majority.

Further, based on the evidence in the record, this Court should enter an order awarding Urban life of part/life of product commissions on the relevant parts as presented in the arbitration proceeds and order an accounting and payment of those commissions.

3

Alternatively, this Court should remand this matter for arbitration proceedings before a new arbitration panel.

Respectfully submitted,

VALENTINE & ASSOCIATES, P.C.

By: /s/Victoria A. Valentine
    Victoria A. Valentine (P58546)
    Stephen K. Valentine, Jr. (P21697)
    Attorneys for Plaintiff
    5767 W. Maple Road, Suite 400
    West Bloomfield, MI 48322
    (248) 851-3010 / (248) 851-1553 fax
    *valulaw@ameritech.net*
    *vav@ameritech.net*

Dated: July 6, 2011

I hereby certified that on ____July 6____, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

    Valentine & Associates, P.C.:    valulaw@ameritech.net
    Michael J. Barton:    mbarton@plunkettcooney.com

    /s/Victoria A. Valentine
    Victoria A. Valentine (P58546)
Dated: July 6, 2011    Attorney for Plaintiff

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

URBAN ASSOCIATES, INC.,
a Michigan corporation,

        Plaintiff,                      Case No. 4:04-cv-40059-PVG-VMM

-vs-                                Hon. Mark A. Goldsmith

STANDEX ELECTRONICS, INC.
a Delaware corporation, and STANDEX
INTERNATIONAL CORP., a Delaware
corporation, jointly and severally,

        Defendants.

---

Stephen K. Valentine, Jr. (P21697)
Victoria A. Valentine (P58546)
VALENTINE & ASSOCIATES, P.C.
Attorneys for Plaintiff
5767 West Maple Road, Ste. 400
West Bloomfield, MI 48322
(284) 851-3010 / (248) 851-1553 fax
valulaw@ameritech.net
vav@ameritech.net

Michael J. Barton (P34509)
PLUNKETT COONEY
Attorney for Defendants
38505 Woodward Ave., Ste. 2000
Bloomfield Hills, MI 48304
(248) 901-4070
mbarton@plunkettcooney.com

---

**PLAINTIFF, URBAN ASSOCIATES, INC.'S, BRIEF IN SUPPORT OF ITS
MOTION TO VACATE OPINIONS/ORDERS AND THE APRIL 14, 2011 "FINAL AWARD"
ISSUED BY THE MAJORITY ARBITRATORS**

---

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

**CERTIFICATE OF SERVICE**

    I hereby certified that on ___July 6,___ 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

           Valentine & Associates, P.C.:    valulaw@ameritech.net
           Michael J. Barton:          mbarton@plunkettcooney.com

                                  /s/Victoria A. Valentine _____
Dated  July 6, 2011                  Victoria A. Valentine (P58546)

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5767 WEST MAPLE RD
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

## TABLE OF CONTENTS

PAGE

STATEMENT OF ISSUES PRESENTED.................................................... iv

INDEX OF CONTROLLING AUTHORITIES............................................ vi

I.   INTRODUCTION - FUNDAMENTAL FAIRNESS?.......................... 1

II.  FACTUAL BACKGROUND.................................................................. 5

     A.   Standex's Agreement............................................................... 5
     B.   The District Court Was Wrong................................................ 6
     C.   Magistrate.................................................................................. 6
     D.   Arbitration................................................................................. 7

III. ARGUMENT....................................................................................... 9

     A.   The Law of the Case................................................................. 9
     B.   The Majority Disregarded the Facts and the Law, Exceeded Their
          Powers and Deprived Plaintiff of a Fundamentally Fair Hearing................. 12
     C.   The Majority Must Have Focused on Arbitrator Rustmann's "Testimony"
          and not on the Evidence......................................................... 15
          i.   The Majority Invented Definition Completely Ignores the
               Court of Appeals' Mandate and Totally Disregards Submitted
               Objective Evidence and Testimony.................................. 15
               (a)   Definition of "Orders Booked".............................. 16
               (b)   Long-Term Contract................................................ 18
               (c)   Arbitrator Rustmann The Witness?....................... 20
     D.   The Excluded Evidence............................................................ 22
          i.   Law............................................................................... 22
          ii.  The Majority Failed to Follow Their Own Procedures....................... 23
               (a)   Summary Judgment................................................. 23
               (b)   Rebuttal Expert....................................................... 25
               (c)   Deprived Discovery................................................ 26
     E.   Predisposed Arbitrators............................................................ 28

IV.  CONCLUSION AND RELIEF REQUESTED......................................... 30

**STATEMENT OF ISSUES PRESENTED**

I. Whether this court must vacate the arbitration award pursuant to 9 U.S.C. §10 where the Majority Arbitrators failed to abide by the law of the case.

Plaintiff says:    Yes.
Defendant says:    No.

II. Whether this court must vacate the arbitration award pursuant to 9 U.S.C. §10 where the Majority Arbitrators were guilty of misconduct by depriving Plaintiff of a fundamentally fair hearing.

Plaintiff says:    Yes.
Defendant says:    No.

III. Whether this court must vacate the arbitration award pursuant to 9 U.S.C. §10 where the Majority Arbitrators exceeded their powers and/or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

Plaintiff says:    Yes.
Defendant says:    No.

IV. Whether this court must vacate the arbitration award pursuant to 9 U.S.C. §10 where the Majority Arbitrators acted with a manifest disregard of the law.

Plaintiff says:    Yes.
Defendant says:    No.

V. Whether this court must vacate the arbitration award pursuant to 9 U.S.C. §10 where the Majority Arbitrators failed to render an award in conformity with the evidence presented in the hearing.

Plaintiff says:    Yes.
Defendant says:    No.

VI. Whether this court must vacate the arbitration award pursuant to 9 U.S.C. §10 where the Majority Arbitrators refused to hear evidence pertinent and material to the controversy.

Plaintiff says:    Yes.
Defendant says:    No.

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

VII.   Whether this court must vacate the arbitration award pursuant to 9 U.S.C. §10 where the Majority Arbitrators exhibited evident partiality.

Plaintiff says:      Yes.
Defendant says:    No.

1

2                        INDEX OF CONTROLLING AUTHORITY

3

4    **COURT RULES:**
     9 U.S.C. §10
5    9 U.S.C. §12
     9 U.S.C. §§1-14 (cited in accompanying Motion to Vacate)
6

7    **CASES CITED:**

8    *Amway Global v. Woodward*, 744 F. Supp 2d 657 (E.D. Mich. 2010)

9    *Beacon Journal Publishing Company v. Akron Newspaper Guild, Local Number 7*,114 F. 3d 596 (6th
10        Cir. 1997)

11   *Benedict v. U.S.*, 822 F. 2d 1426 (6th Cir. 1987)

12   *Coe v. Suburban Light & Power Co.*, 167 N.E. 693 (Ohio Ct. App. 1929)

13   *Coffee Beanery, Ltd. v. WW, LLC*, 300 Fed. Appx. 415 (6th Cir. 2008) [Appendix A]
14

15   *Grand Rapids Die Casting v. Local Union No. 159*, 684 F. 2d 413 (6th Cir. 1992)

16   *Hall Street Assoc., LLC v. Mattel, Inc.* 552 U.S. 576 (2008)

17   *HMC Management Corp. v. Carpenters Dist. Council*, 750 F. 2d 1302 (5th Cir. 1985)

18   *Hoteles Condado Beach, La Concha and Convention Ctr. v. Union de Tronquistas Local 901*, 763 F.
19        2d 34 (1st Cir. 1985)

20   *Jacada, Ltd. v. International Marketing Strategies*, 401 F. 3d 701 (6th Cir. 2005), abrogated on
         other grounds, 522 U.S. 576 (2008).
21

22   *Martin Marietta Materials v. Bank of Okla*, 304 Fed. Appx. 360 (6th Cir. 2008) [Appendix B]

23   *Matteson v Ryder Sys*, 99 F.3d 108 (3rd Cir. 1996)

24   *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F. 3d 418 (6th Cir. 1995)

25   *Nat'l Renal Alliance, LLC v. GAIA Healthcare Systems, LLC*, 2011 U.S. Dist. LEXIS 10808 (M.D.
26        Tenn. 2011) [Appendix C]

27   *Salei v. Shearson Lehman Bros.*, 1996 U.S. Dist. LEXIS 7620 (E.D. Mich. 1996) [Appendix D]

28

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

5767 WEST MAPLE RD
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

*Siegal v. Titan Indus. Corp.*, 779 F. 2d 891 (2nd Cir. 1985)

*Solvay Pharms., Inc. v. Duramed Pharms., Inc.*, 442 F. 3d 471 (6th Cir. 2006)

*Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010)

*Terry Barr Sales Agency, Inc. v. All-Lock Company, Inc.*, 96 F. 3d 174 (6th Cir. 1996)

*The Thomas Kinkade Company, Inc. v. Lighthouse Galleries, LLC*, 2010 U.S. Dist. LEXIS 6443 (E.D. Mich. 2010) [Appendix E]

*Urban Assoc. Inc. v. Standex Elec. Inc.*, 2006 U.S. Dist. LEXIS 3502 (E.D. Mich. 2006)

*Urban Assoc. Inc. v. Standex Elec. Inc.*, 216 Fed. Appx. 495 (6th Cir. 2007)

*Wold Architects & Engineers v. Strat*, 474 Mich. 223 (2006)

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5767 WEST MAPLE RD
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

## I. INTRODUCTION - FUNDAMENTAL FAIRNESS?

To encourage parties to agree to arbitration in the first place, the FAA ensures that "arbitration awards are both fair and final." *Solvay Pharms., Inc. v. Duramed Pharms., Inc.*, 442 F.3d 471, 475 (6th Cir. 2006). The act promotes finality "by substantially limiting the occasions for judicial review," id., and expressing "a presumption that arbitration awards will be confirmed." *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 328 (6th Cir. 1998). *At the same time, however, fairness is achieved "by requiring courts to intervene when arbitrators so improperly execute their responsibilities as to discourage others from arbitrating in the future." Solvay, 442 F.3d at 475. The Thomas Kinkade Company, Inc. v Lighthouse Galleries, LLC*, 2010 U.S. Dist. LEXIS 6443 *17 (E.D. Mich. 2010). (Emphasis ours).

"Effusively deferential language notwithstanding, courts are neither entitled nor encouraged simply to "rubber stamp" the interpretations and decisions of Arbitrators...Courts still maintain a significant role in the...arbitration process..." *Matteson v. Ryder Sys*, 99 F. 3d 108, 114 (3rd Cir. 1996). "The great deference afforded arbitration awards is not the equivalent of a grant of limitless power." *Matteson, supra.*

As our United States Supreme Court recently held, "[i]t is when an arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1767 (2010) quoting *Major League Baseball Players Assn v. Garvey*, 532 U.S. 504 (2001).

In *Beacon Journal Publishing Company v. Akron Newspaper Guild, Local Number 7*, 114 F. 3d 596 (6th Cir. 1997)[1], the Court stated that "judges and arbitrators are mandated to respect the agreement the parties have reached." *Beacon, supra* at 600. There, the Court found "the

---

[1] Labor-Arbitration cases govern disputes under the Federal Arbitration Act (FAA). *Martin Marietta Materials v. Bank of Okla*, 304 Fed. Appx. 360 (6th Cir. 2008); *Solvay, supra* at 476.

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5767 WEST MAPLE RD
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

arbitrator imposed his own brand of 'industrial justice' in this case by crafting guidelines that do not even arguably derive themselves from the contract." *Beacon, supra.* In vacating the arbitrators' award, the Court held that "[t]he arbitrators' decision violates the very touchstone of arbitration – that the award 'draw its essence' from the...agreement." *Beacon, supra* at 600. "[A]n arbitrator does not have unfettered discretion and when he or she departs even from arguably construing the contract, this court must vacate the award." *Beacon, supra.*

An arbitrator fails to draw its essence from the agreement when:

> (1)  it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on "general considerations of fairness and equity" instead of the exact terms of the agreement. *Solvay, supra* at 476 quoting *Beacon Journal Pub.*, 114 F. 3d at 600).

*See also, HMC Management Corp. v. Carpenters Dist. Council*, 750 F. 2d 1302 (5th Cir. 1985) (Court vacated an arbitration award because the arbitrator's opinion was based on his sense of what was improper behavior); *Grand Rapids Die Casting v. Local Union No. 159*, 684 F. 2d 413 (6th Cir. 1992) (arbitrator improperly substituted his own provisions on discharge procedures in an agreement in place of those agreed upon by the parties); and *Jacada, Ltd. v. International Marketing Strategies*, 401 F. 3d 701, 712 (6th Cir. 2005), abrogated on other grounds, 522 U.S. 576 (2008), (the Court reiterated that "[a]n arbitrator's award is to draw its essence from the agreement and it is not merely his own brand of industrial justice.")

Pursuant to 9 U.S.C. §10(a), this Court may vacate an arbitration award:

> (1) **where the award was procured by** corruption, fraud, or **undue means;**

> (2) **where there was *evident partiality*** or corruption in the arbitrators, or either of them;

LAW OFFICES

VALENTINE & ASSOCIATES, P.C.

5761 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

(3) **where the arbitrators were guilty of** misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in **refusing to hear evidence pertinent and material to the controversy;** or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) **where the arbitrators *exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award*** upon the subject matter submitted ***was not made.*** 9 U.S.C. §10(a). (*See also, Kinkade, supra* \*17). (Emphasis ours).

The Sixth Circuit also recognizes judicial intervention is appropriate where the arbitrators have acted with manifest disregard for the law. *Nat'l Renal Alliance, LLC v. GAIA Healthcare Systems, LLC*, 2011 U.S. Dist. LEXIS 10808 (M.D. Tenn. 2011).[2]

Manifest disregard of the law is found where, "the arbitrator understood and correctly stated the law but proceeded to ignore it." *Siegal v. Titan Indus. Corp.*, 779 F. 2d 891 (2nd Cir. 1985). The award "must fly in the face of legal precedent." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F. 3d 418, 412 (6th Cir. 1995). "The arbitrators act in manifest disregard if (1) the applicable legal principle is clearly defined and (2) the arbitrator refused to heed that legal principle." *Jacada, supra*.

Here, the award must be vacated because the Majority Arbitrators (Majority):

(I)     *failed to abide by the law of the case;*

(II)    *were guilty of misconduct by depriving Urban of a fundamentally fair hearing.*

(III)   *exceeded their powers and/or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made;*

---

[2] The Sixth Circuit Court of Appeals, as well as this Eastern District, continue to employ this manifest disregard of the law standard, even after the United States Supreme Court case of *Hall Street Assoc., LLC v. Mattel, Inc.* 552 U.S. 576 (2008). *See, Coffee Beanery, Ltd. v. WW, LLC*, 300 Fed. Appx. 415, 419 (6th Cir. 2008); *Amway Global v. Woodward*, 744 F. Supp 2nd 657 (E.D. Mich. 2010); *Kinkade, supra*.

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5757 WEST MAPLE RD
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

5757 WEST MAPLE RD
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

(IV)   *acted with a manifest disregard of the law;*

(V)   *failed to render an award in conformity with the evidence presented in the hearing;*

(VI)   *refused to hear evidence pertinent and material to the controversy; and*

(VII)   *exhibited evident partiality.*

Although just one of the errors committed by the Majority is sufficient to be a basis for vacation of the award, it is the entirety of these proceedings that thoroughly contaminated this arbitration.  Throughout these entire proceedings, the Majority ignored the mandate from the Court of Appeals (COA) and kept redefining their own invented definition of the key term in this case: **"orders booked,"** during which time Urban encountered roadblock after roadblock because the invented definition was continually altered.  This ever-changing definition included invented terms not found in the agreement, e.g., "binding releases," "long-term agreements" and "fixed term requirements contract," among others, which also directly contradicted the COA mandate.  Because this invented definition does not emanate from the evidence and objective testimony, it must have come from the Majority's own preconceived views and opinions, including the "testimony" of Arbitrator Rustmann, Standex's party-appointed non-neutral arbitrator.  The contamination continued when the Majority:  failed to admit pertinent and relevant evidence; failed to follow its own rulings; and when Arbitrator Rustmann took control of these proceedings and essentially "testified" as to the pivotal definition of "orders booked."

The ultimate definition of "orders booked," as defined and redefined by Arbitrator Rustmann and adopted by the Majority was at complete odds with the definitions given by

objective evidence and witnesses, including Standex's Mr. Anderson, the officer in charge of

Urban's relationship with Standex.

## II. FACTUAL BACKGROUND

**A.    STANDEX'S AGREEMENT:**

In 1990, Plaintiff, Urban's, predecessor and Defendant, Standex, entered into a sales

representative agreement (SRA) that was drafted by Standex's Vice-President, Charles

Johnson. Paragraph 10 of the Agreement, the paragraph at issue, provides, in pertinent part,

as follows:

> Upon termination by the company, commissions shall be paid on all **orders booked** by the Representative and received by the Company in house prior to an including the termination date.  No commissions shall be paid to the Representative for orders booked by the Representative and/or received by the Company after the termination date.... (Ex. 1: SRA, ¶10).  (Emphasis ours).

Mr. Johnson admitted that:

- the "orders booked" paragraph is ambiguous (Ex. 2: 3/23/09 Tr., pp. 131-132);

- when drafting this paragraph he most likely pulled it out of another document (Ex. 2: 3/23/09 Tr., p. 131);

- he had no conversation with Urban about his definition of "orders booked" (Ex. 2: 3/23/09 Tr., pp. 129-130; 143);

- he did nothing to assure that both Urban and Standex were on the same "wavelength" as to the meaning of "orders booked (Ex. 2: 3/23/09 Tr., pp. 129-130 and 143);

- "orders booked is not synonymous with shipping release or shipment order or release order" (Ex 2: 3/23/09 Tr., pp 130-131); and

- *most importantly,* he never discussed Standex's interpretation of the meaning of "orders booked" with Urban(Ex. 2: 3/23/09 Tr., p 106).

Johnson also testified that when he drafted the Agreement he intended "orders booked" to mean that Urban would be paid commission for as long as that purchase order lasted." (Ex. 2: 3/23/09 Tr., pp. 104-105).[3]

After years of securing millions of dollars in business for Standex, Standex terminated Urban, but not before Standex conveniently made arrangements to secretly hire Urban's key employee, Denise Falzon. Thereafter, Standex refused to pay Urban all commissions owing for "orders booked" under the agreement Standex drafted.

**B.    THE DISTRICT COURT WAS WRONG:**

Urban filed suit alleging, *inter alia*, breach of contract. Standex moved for summary judgment, seeking a dismissal of all counts of the complaint. The district court agreed with Standex and granted its motion.[4] (Ex 3: USDC Opinion).

Urban appealed and the COA reversed the dismissal of the breach of contract claim, finding the district court erred when it agreed with Standex. (Ex. 4: COA Opinion (216 Fed. Appx. 495 (6th Cir. 2007)).

**C.    MAGISTRATE:**

Based on the COA Opinion, Urban then filed a motion for summary judgment, which the Magistrate denied, holding that Urban have the opportunity at trial for a "reasonable fact

---

[3] Standex may claim that Johnson's testimony supports Rustmann's invented and ever-changing definition of "orders booked"; however, it must be remembered Johnson's subjective interpretation was admittedly never disclosed to Urban and is contrary to other testimony presented.

[4] *Urban Assoc. Inc. v. Standex Elec. Inc.*, 2006 U.S. Dist. LEXIS 3502 (E.D. Mich. 2006).

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

finder to determine which, if either, alternative interpretation the parties intended." (Ex. 5: USDC Magistrate Opinion, p. 5).

## D.  ARBITRATION:

On 2/25/08, the parties entered into a Stipulated Order for Arbitration (Ex 6) and ultimately arbitrators were chosen consisting of:  The Hon.Robert Webster, former Oakland County Circuit Court Judge (Neutral Arbitrator); Frederick Lauck (Urban's Party-Appointed Arbitrator); and Daniel Rustmann (Standex's Party-Appointed Arbitrator) (Ex. 6).

The Arbitration Agreement provides in pertinent part as follows:

> 5. The Arbitrators are to receive and be bound by the Court of Appeals opinion in this case and the recommendation of the magistrate denying Urban's motion for summary judgment under the law of the case doctrine. (Ex. 6, p. 3, ¶5).

On 3/23/09, before the arbitration proceedings began, Arbitrators Webster and Rustmann made comments essentially to the effect that ..."Judge Gadola [the USDC Judge] got it right";  meaning that – despite the COA's ruling – they opined that the Agreement relating to "orders booked" was unambiguous.

After the initial hearing, on 3/23/09 through 3/25/09, the Majority issued their first opinion, dated 5/11/09, which created a new definition of "orders booked," unsupported by the objective evidence and that contravened the COA' mandate.[5]  The Majority found:

> ...that Plaintiff, Urban, is entitled to post termination commissions only on any **binding** releases issued prior to termination for shipment subsequent to termination or on **any long term agreement (fixed term requirements contracts)** procured by Plaintiff prior to termination, the

---

[5] The only Standex witnesses who had any familiarity with the term "orders booked" were Standex Vice Presidents, Johnson and Anderson.  Neither gave any objective evidence supporting the Majority's constantly changing definitions. This will be more fully set forth *infra*.

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5767 WEST MAPLE RD
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

term of which extended past termination of Plaintiff ("Allowed Commissions"). (Ex. 7, p. 2). (Emphasis ours).

The Majority ordered an evidentiary hearing on Urban's proof of unpaid Allowed Commissions. At the evidentiary hearing, Arbitrator Rustmann continued to redefine and recreate his invented term "orders booked":

> ARBITRATOR RUSTMAN: I mean, the blankets could be terminated at any time and there was no **obligation** to buy anything...there was no evidence that there was any **obligation** to issue any releases against a blanket purchase order.
>
> What I was talking about was it is an **exclusive contract**, we are going to buy **all of our requirements of X number of parts** from you for this year, and then there is a **binding commitment** to buy whatever our **requirements** are of those contracts. (Ex. 8: 5/20/09 Tr., p. 25).

A Scheduling Order, dated 6/2/09 (Ex. 9), was then issued ordering further briefing on liability under the newly defined "orders booked." Urban was ordered to only bullet point evidence (Ex. 8: 5/20/09 Tr., p. 106) establishing "a prima facie basis for each contract claimed and shall indicate if it desires production of additional documents from defendant." (Ex. 9, pp. 1-2).

Urban complied by filing a bullet point brief; and, because of Arbitrator Rustmann's changing definition of "orders booked," it attached the affidavit of its expert rebuttal witness.[6] (Ex. 10).

On 11/9/09, contrary to the Majority's promises and representations made at the 5/20/09 hearing, another Opinion was issued without hearing or testimony. This Opinion once

---

[6] The Majority did not allow the testimony of the rebuttal expert nor did it accept the affidavit as an exhibit.

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

more redefined and changed the definition of "orders booked"; and, in effect, denied Urban the right to present relevant evidence in support of its position. (Ex. 11).

This time the Majority again raised the bar, changed the proof Urban needed to establish liability, and again contravened the COA Opinion. Their revised definition now added the new and additional requisite – *that the long term agreement be binding* and ordered another evidentiary hearing on liability relating only to two TRW parts. (Arb. Lauck dissent). (Ex. 11, p. 2).

Urban filed a Motion for Correction of Errors and/or Reconsideration and for a Full Hearing. This motion was heard on 4/14/10 and was later denied. (Ex. 12).

Evidentiary hearings on liability on only these two TRW parts were held on 9/9/09-9/10/10 and 1/11/11-1/12/11. Thereafter, the Majority issued their "Final Award," dated 4/14/11 (Ex. 13) (Lauck dissenting).

Urban now, pursuant to 9 U.S.C. §§10 and 12, files this Motion to Vacate this 4/14/11 Final Award, as well as the other Orders/Opinions issued by the Majority.

## III. ARGUMENT

### A.   THE LAW OF THE CASE:

The COA reversed the district court's grant of Standex's Motion for Summary Judgment and dismissal of Urban's breach of contract claim[7] for the very same errors the Majority commit here. The COA found:

> Paragraph 10 does not define **"orders booked"** nor does it place any temporal limit on how long Standex must pay commission for such "orders booked." (Ex. 4, p. 15)....

---

[7] It affirmed the summary judgment on other causes of action.

5757 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5757 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

No other provisions of the agreement shed any light on what the parties meant by ¶10's "orders booked." (Ex. 4, p. 17). (Emphasis ours).

In granting Standex's summary disposition, the district court erred by adopting the same position Standex argues here: that "orders booked" meant an **enforceable** obligation, a **shipment** order or **release** order. In agreeing with Standex, the district court had held:

> Here, the term "orders booked" is not susceptible to two or more reasonable interpretations. **It is unreasonable to assume that Plaintiff would be due commissions on "orders" that would not create an enforceable obligation on the part of the customer to purchase the products ordered.** *See Hudson v. Tektronix, Inc.*, 1982 Ohio App. LEXIS 12909 (Ohio Ct. App. 1982) (unpublished); *Chicago Fineblanking Corp. v. D.J. Cotter & Co.*, 1996 U.S. Dist. LEXIS 21882 (E.D. Mich. 1996) (unpublished). Plaintiff seems to argue that the Agreement vests commissions through a blanket purchase order, which commissions later become due when a shipment order is made by the customer....

> Defendants owed commissions to Plaintiff for the "orders booked" that **resulted in the obligation on the part of the customer to purchase the product so ordered. That obligation arose through the a [sic] customer's shipment or release order, which, when combined with the terms of the blanket purchase order against which it was made,** would determine the obligations of the contracting parties and the commissions due Plaintiff. (Ex. 3, pp. 7-8). (Emphasis ours).

In reversing, the COA spent 14 pages explaining the district court's error (which are essentially some of the errors of the Majority) in adopting Standex's position. It found, contrary to the district court's opinion, that:

> (1) extrinsic evidence supported Urban's claim that "life of the part" commissions was the industry norm after termination absent a contractual provision or post termination negotiations to the contrary [the understanding stated not only by Urban's expert, but also by Mr. Anderson, Standex's Vice President. (Ex. 14: 9/9/10 Tr., pp. 66-67)];

> (2) the district court's reference to ¶7 of the agreement was misplaced since it was ¶10, not ¶7, that related to post termination commissions;

> (3) the district court made reference to a "shipment [order] or release order despite the fact that the agreement never used those terms";

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

(4) the district court had assumed that Urban's right to commission depended on *the issuance of an order that obligated the customer* to purchase a certain **quantity of Standex's product, despite the fact that the Agreement contained no such requirement and that** there was no evidence that this was the nature of the blanket Purchase Orders or **requirements contracts** used in the auto industry in Michigan at that time; and

(5) refuted the district court's reliance on *Hudson v. Tektronix*, 1982 Ohio App. LEXIS 12902 (Ohio Ct. App. 1982), indicating that *Hudson* is a case with facts dissimilar to those here. (Ex. 4, pp. 11-12).

After delineating the above-shortcomings of the district court, the COA rejected Standex's claim and affirmatively held that "where ¶7 ("Commissions") conflicts with ¶10 ("Termination") as to post termination commissions, ¶10 must prevail as *a matter of law*." (Ex. 4, p. 17).  And, specifically when construing ¶10, the COA disagreed with the district court's adoption of Standex's position and ruled as follows:

> Reading the agreement as a whole and considering all the extrinsic evidence, a reasonable factfinder could conclude that the parties intended Urban to receive post-termination commissions at least for the life of the POs that were received prior to the termination date.  Indeed, it might be difficult for a factfinder to conclude that the parties did *not* intend the agreement to give Urban a right to commissions at least for the life of the purchase order – the very **Standex official who drafted the agreement testified that he understood the agreement to guarantee commissions to the extent.** (Ex. 4, p. 22).  (Emphasis in original).

It also held:

> Lastly, Standex drafted the agreement.  If Standex wished to limit post-termination commissions to products shipped before termination, it could have made that clear in ¶10.  Similarly, if Standex wished to impose a temporal limit on post-termination commissions to products shipped before termination, it could have made that clear in ¶10.
>
> But Standex used the term **"orders booked" instead of referring to "products shipped" or, "shipment releases," failed to define "orders booked," and failed to include a temporal limit on post-termination commissions. By these acts and omissions in drafting the agreement,**

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5757 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

Standex did nothing to dispel the impression that it intended to pay Urban post-termination commissions for the life of the PO [purchase order] (as Standex's own Vice-President intended) or (even **for the life of the part (which Urban's expert testified was the default arrangement in the industry).** Standex thus cannot escape the long-settled principle of Ohio law that

> every thing is to be taken most strongly against the party who prepared the contract - the one who, in the absence of proof to the contrary, created the doubt, which in this case is the defendant. He who speaks in a written contract prepared by himself should speak plainly and, failing to do so, must abide the natural and legal results of such failure.

*Coe v. Suburban Light & Power Co.,* 167 N.E. 693, 695 (Ohio Ct. App. 1929).

The district court erred in concluding that the term "orders booked" was not ambiguous, and Urban presented ample evidence from **which a reasonable factfinder could adopt one of its two preferred interpretations of the term.** (Ex. 4, pp. 22-23). (Emphasis ours).

The COA also cautioned Standex that "in disputes over interpretation of contract term where appellant's own testimony contradicts the position asserted by appellant's counsel in the brief, Statements of counsel do not constitute evidence." (Ex. 4, p. 21).

**B.    THE MAJORITY DISREGARDED THE FACTS AND THE LAW, EXCEEDED THEIR POWERS, AND DEPRIVED PLAINTIFF OF A FUNDAMENTALLY FAIR HEARING:**

Here, the Stipulation and Order for Arbitration (Ex. 6) bound the arbitrators to the COA Opinion[8] and recommendation of the magistrate under the law of the case doctrine. (Ex. 6, ¶5). Accordingly, the COA mandated that this ambiguous contract be construed against Standex.

Arbitrator Rustmann, however, apparently thought otherwise:

---

[8] *Urban, supra.* (Hereinafter Urban or Standex).

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

ARBITRATOR RUSTMANN: "I don't think I am bound by a court of appeals dicta."[9] (Ex. 8: 5/20/09 Tr., p. 56)....

ARBITRATOR RUSTMANN: We already construed the **unambiguous** language of the contract and we already made a ruling that —...(Ex. 15: 9/10/10 Tr., p. 108). (Emphasis ours).

Arbitrator Rustmann's refusal continued:

ARBITRATOR RUSTMAN: I think the agreement, the language is **unambiguous**. I don't think it requires --

MR. VALENTINE: The reason we're here is it is **ambiguous**. (Ex. 16: 1/11/11 Tr., pp. 44-45). (Emphasis ours).

The Majority disregarded the COA admonishment to the district court[10] for the latter's reference to and use of the terms "products shipped" and "shipment releases," and the right to commissions depended on issuance of an order that obligated the customer, even though Standex's agreement did not contain such terms. (Ex. 4, pp. 11-12). In the Rustmann-authored 5/11/09 Majority Opinion, he defined "orders booked" as "any binding releases issued prior to termination for shipment subsequent to term or on any long term agreement (fixed term requirements contracts)" (Ex 7).

Subsequently, at the 5/20/09 evidentiary hearing, Arbitrator Rustmann reinterpreted/reinvented/refabricated his 5/11/09, which was adopted by the Majority, again ignoring the COA mandate:

---

[9] The quotations cited are rulings from the COA, which were necessary to determine the case and are not *dicta*. "*Dicta* is defined as: 'Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand....'". *Wold Architects & Engineers v. Strat*, 474 Mich. 223, 756 (2006).

[10] In reversing the district court, the COA stated that Standex used the term "orders booked" instead of referring to "products shipped" or "shipment releases," failed to define "orders booked" and failed to include a temporal limit on post-termination commissions. *See* Brief pp. 11-12 *supra* quoting from the COA Opinion. (Ex. 4, pp 22-23).

5767 WEST MAPLE RD
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5767 WEST MAPLE RD
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

ARBITRATOR RUSTMAN: -- **my intent** was that blanket orders -- **that in the context of blanket orders, that under the contract language** of the rep contract, which my interpretation was that **it required binding commitments to purchase for shipment of product into the territory.** And that if there was just a blanket order without releases issued against it, that did not constitute a **binding commitment** to purchase for shipment into the territory...

ARBITRATOR RUSTMAN: And that **it was only** a **binding commitment** to the **extent that there were binding releases** that were **issued against** it. If there was a converse situation where there was a **long-term agreement** that said we are going to buy **X parts for this year at X price and we are going to buy our entire requirements of them**, not just what we say we want to buy by issuing releases, that's a different situation....

ARBITRATOR RUSTMAN: I mean, the blankets could be terminated at any time and there was no **obligation** to buy anything. There was no evidence that they were **exclusive**, there was no evidence that there was any **obligation** to issue any releases against a blanket purchase order.

What I was talking about was it is an **exclusive contract**, we are going to buy **all of our requirements of X number of parts** from you for this year, and then there is a binding commitment to buy whatever our requirements are of those contracts.

ARBITRATOR LAUCK: Are we interpreting what you meant? Is that what is going on?

ARBITRATOR RUSTMAN: That's what I meant by it.

ARBITRATOR LAUCK: I can't believe we are sitting here trying to interpret now what is the plain language of the opinion. Okay. (Ex. 8: 5/20/09 Tr., pp. 24-26). (Emphasis ours).

After the 5/20/09 hearing, Arbitrator Rustmann issued another opinion (also adopted by the Majority) in which he again raised the bar and reinterpreted and redefined the term "orders booked," again ignoring the COA mandate. This time, he added the burden of establishing a "**binding** long-term agreement." (Arbitrator Lauck dissenting). (Ex. 11, p. 2).

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5757 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

And, besides failing to heed the COA direction regarding construing the contract against Standex, the Majority did not follow the COA mandate that:

> "In disputes over interpretation of contract terms where appellant's own testimony contradicts the position asserted by appellant's counsel in the brief, **Statements of counsel do not constitute evidence.**" (Ex. 4, p. 21).

Here, Standex's own Vice Presidents, Johnson's and Anderson's, objective testimony contradicts Standex's position as set forth by its **statements of counsel.**

Johnson admitted he intended "orders booked" to mean that Urban would be paid commission for as long as that purchase order lasted." (Ex. 2: 3/23/09 Tr., pp. 104-105).[11] (*See also,* Brief pages 5-6 *supra,* which details Johnson's testimony that contradicts Standex's position.)

Anderson [Standex's Vice President], stated it was his understanding that Urban was entitled to **life of part** commissions and that the orders were "booked" when they were entered into Standex's computer system (Ex. 14: 9/9/10 Tr., pp. 66-67 and 69-70). (Emphasis ours).[12]

**C. THE MAJORITY MUST HAVE FOCUSED ON ARBITRATOR RUSTMANN'S "TESTIMONY" AND NOT THE EVIDENCE:**

    i. **The Majority's Invented Definition Completely Ignores the COA Mandate and Totally Disregards Submitted Objective Evidence And Testimony:**

---

[11] Standex may claim that Johnson's testimony supports Rustmann's invented and ever-changing definition of "orders booked"; however, it must be remembered Johnson's subjective interpretation was admittedly never disclosed to Urban and is contrary to other testimony presented by Johnson, Anderson, Mathews, and Urban and other evidence that calls for the payment to Urban of commissions for the life of the part.

[12] This interpretation is consistent with Urban's expert's testimony and the industry default definition for post-termination commissions, which will be discussed *infra.*

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.
5767 WEST MAPLE RD
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

(a).    **Definition of "Orders Booked"**

Anderson testified that an "order booked" was accomplished when the relevant information was put into the Standex system via a computer entry and other means identifying the representative who was to receive the commissions:

- Q. With regard to when an order came into Standex, can you please explain to me what the procedure is with regard to that?

  A. Well, <u>assuming the part number has been established, the order would be entered into the system</u>...

  Q. <u>Okay. When an order is booked, the order is entered into the Standex computer system, and then coded with the sales commission code for the sales representative</u>, is that what you just told us?

  A. <u>Yes</u>. (Ex. 14: 9/9/09 Tr., pp. 69-70). (Emphasis ours).

- Q. So what is your understanding of what orders booked means?

  A. Well, <u>in the case of automotive it's tied to a part number.  And the part number you can trace it...to the automotive platform</u> and use platform...

  Q. And, so, <u>if Urban was to be paid commission on all</u> orders booked...prior to and including the termination date, <u>how long would he be entitled to post-termination commissions on orders booked?</u>

  A. It was my understanding, generally speaking, <u>for the life of the part</u>. (Ex. 14: 9/9/10 Tr., pp. 66-67). (Emphasis ours).

Anderson, also unequivocally testified that all parts on Exhibit 2 [the parts at issue] were <u>booked by Urban.</u> (Ex. 14: 9/9/10 Tr., pp. 99-100 and Ex. 17: 1/12/11 Tr., p. 14):

- "A. [MR. ANDERSON] [Exhibit 2] ...<u>anybody who was familiar with the business would know that those part numbers were part numbers that were initiated by Urban on behalf of Standex</u>....

  Q   <u>And if these part numbers went to different customers, would Urban still be entitled to a commission on that business?</u>

  A   <u>Yes</u>, they would. (Ex. 17: 1/12/11 Tr., pp. 10-11). (Emphasis ours)....

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

- Q [MS. VALENTINE] <u>And these parts on Exhibit 2, these were all orders that were booked by Urban. Is that your testimony</u>?

  A [MR. ANDERSON] <u>Yes, they were</u>...." (Ex. 17: 1/12/11 Tr., p. 14). (Emphasis ours).

- "[MR. ANDERSON] ...<u>[T]hose [part numbers on Ex 2] are all Urban-specific generated part numbers for their customers</u>." (Ex. 14: 9/9/10 Tr., pp. 99-100).

- "A   [MR. ANDERSON] Well, <u>the automotive parts [on Ex 2] are unique to automotive...they are Urban-specific part numbers.</u>

  Q   Okay. <u>And would you agree that he should be paid commission until the part ends pursuant to this January 1st, 1990 agreement?</u>

  A <u>I certainly believe so....</u>" (Ex. 14: 9/9/10 Tr., p. 77). (Emphasis ours).

This testimony of Anderson regarding "life of part" and "orders booked" conforms with the industry default standard, as testified to by Urban and Urban's expert, Charles Mathews and as set forth in the law of the case. The industry standard regarding payment of post-termination commission to a manufacturer's representative where there is no limitation in an agreement is "[t]hat the rep gets paid for the life of the part." (Ex. 18: 3/24/09 Tr., pp. 163-165). This is especially relevant here since the COA found that "Standex...failed to include a temporal limit on post-termination commissions." (Ex. 4: COA, pp. 22-23). This is also in conformity with Urban's testimony that "[the standard] in the automotive [industry] is typically life of part." (Ex. 2: 3/23/09 Tr., pp. 26-27). "My understanding was we would be paid for the life of the programs that we had going, whether that be the part or purchase orders that they were in existence" (Ex. 2: 3/23/09 Tr., p. 26) and is recognized by the courts:

> "Life of the part" commissions are apparently a fairly common practice in the manufacturer's representative business. As we explained in *Kingsley Assoc., Inc. v. Moll Plasticrafters, Inc.*, 65 F. 3d 498, 502 n 5 (6th Cir. 1995), sales representatives commonly insist on "life of part" provisions in agency

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5757 WEST MAPLE RD
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

contracts "because the sales representative must invest a great deal of time, effort, and money in securing an initial sale." However, after an initial sale is made, "the buyer may continue to use the part in the manufacture of is automobiles for many years." *Id. Terry Barr Sales Agency, Inc. v. All-Lock Company, Inc.*, 96 F. 3d 174, 177 (6th Cir. 1996).

Johnson, Anderson's predecessor, drafted the contract. Johnson admitted it was ambiguous and testified he did not discuss with Urban his intent, interpretation or meaning of the term "orders booked," which he pulled from other contracts. (Ex. 2: 3/23/09 Tr., p. 106). Johnson also admitted that his intent was for Urban to be paid a commission "for as long as that order, purchase order, lasted," (Ex. 2: 3/23/09 Tr., pp. 104-105), which he stated were "basically on an annual basis..." (Ex. 2: 3/23/09 Tr., pp. 105-106); but, if it was longer than annually, then for as long as it lasts. (Ex 2: 3/23/09 Tr., p. 104). And, Johnson stated that "orders booked is not synonymous with shipping release, shipping order or release order" (Ex 2: 3/23/09 Tr., p. 132), and he also testified that prior to his departure from Standex business evolved into multi-year contracts:

> Q [BY ARBITRATOR LAUCK]  If you were chasing a piece of business, was it the object of Standex to be the supplier of that particular part identified by a number for as long as that part lasted?
>
> A [BY JOHNSON]  We would hope so, yes. (Ex. 2: 3/23/09 Tr., p. 104).

### (b)    Long-Term Contract:

Even under Arbitrator Rustmann's invented and changing definition of "orders booked," the Majority ignored the presented evidence and ultimately found that only two TRW orders satisfied its reinvented definition of LTA fixed term requirement contracts. This finding was contrary to the plethora of evidence Urban presented supporting the new Majority-

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5757 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

5757 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

reinvented definition of "orders booked" as being "long term agreement (fixed requirement contracts)." Urban presented the following requirements contracts and/or LTAs:

- Delphi Purchase Order dated 1/29/02, (which does not have an end date), for parts CB 1031700 & CT 1028900 specifically states it is a "**REQUIREMENTS CONTRACT FOR APPROXIMATELY 100% OF OUR PURCHASES**." (Standex 00700-00705). (Ex. 19, pp. 2-7). (Emphasis ours).

- Delphi Purchase Order dated 1/30/02, (which does not have an end date), for parts CB 5015700C and CB 5015701C specifically states it is a "**REQUIREMENTS CONTRACT FOR APPROXIMATELY 100% OF OUR PURCHASES**." (Standex 00781-00789). (Ex. 19, pp. 8-15). (Emphasis ours).

- ABC Group - "Subcontract Business Requirements" document specifically states it is a **long term commitment**. Urban attached an exhibit dated January 24, 2000, which is a letter to Standex's Linsley from Silvino Gatti, senior buyer of ABC Group. The letter specifically stated:

  > "Accompanying is a copy of the **ABC Group** of Companies Sub-Contractor **Business Requirements** package for your acceptance. Note that these terms are fairly standard for those companies supplying components within the Automotive Industry....
  >
  > In keeping with ABC's **long term agreement commitments of the five year life of this program**, ABC Air Management Systems is committed to annual price reductions. We therefore ask your company to confirm acceptance of these requirements, both in achieving a yearly price reduction as well as meeting all of the outlined quality and delivery requirements." (Ex. 19, p. 1). (Emphasis ours).[13]

The evidence detailed above, which specifically states that such are **requirements contracts and/or long-term commitments,** was completely ignored by the Majority.

Despite the mandate from the COA, the Majority dispensed their "...own brand of industrial justice by creating additional requirements not found in the contract." (*Beacon, supra* at 600). In doing so, they were derelict in their duties and in their mission of interpreting

---

[13] Notwithstanding the fact that these orders constituted requirements contracts and/or LTAs, the acceptance of the requirements contracts by Standex was also previously presented, but ignored.

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

the **ambiguous** agreement and construing it against Standex, the drafter. Here are some, but not all, of the deficiencies of the Majority:

- They ignored the credible, reliable and relevant testimony of Standex's own Anderson, who testified that Exhibit 2 constituted "orders booked" by Urban. (Ex 14: 9/9/10 Tr., pp. 77 and 99-100 and Ex. 17: 1/12/11 Tr., pp. 10-11 and 14);

- They ignored the plethora of evidence and created a requirement of establishing long term agreements (fixed term requirements contract).

- They focused on the "testimony" of Standex's Arbitrator Rustmann, which included interpretations violating the COA mandate. These fatal errors certainly evidence how the Majority improperly executed their responsibilities, exceeded their powers, deprived Urban of a fundamentally fair hearing and acted in manifest disregard of the law by which they were bound.

### (c).   Arbitrator Rustmann The Witness?:

The Majority's changing definition, authored by Arbitrator Rustmann, runs afoul of the COA mandate, does not emanate from the contract language at issue or from the evidence and objective witness testimony presented. Rather, it must have come from his own "testimony" and from the Majority's preconceived bias. In essence, at the hearing, Arbitrator Rustmann "testified" as to his opinion and definition of "orders booked" and fabricated a definition of "orders booked":

- ARBITRATOR RUSTMAN:  **My question, though, has been from day one; is there a binding commitment to purchase for shipment into their territory?**  If the LTA [long-term agreement] ended, then it goes on a terminable PO and it is no longer a binding commitment.

   MS. VALENTINE:  Well, that's your testimony, Dan.

   ARBITRATOR RUSTMAN:  That's not my testimony.  That's my position.

   MS. VALENTINE:  There's not one witness who testified — ....(Ex. 16: 1/11/11 Tr., pp. 30-31). (Emphasis ours).

5767 WEST MAPLE RD
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

- ARBITRATOR RUSTMANN: **I have some knowledge of the industry. I know blanket purchase orders can be issued in different forms.** Some will say you're going to supply our **entire requirements** of this part as long as this purchase order issued and some are more indefinite in terms of – (Ex. 2: 3/23/09 Tr., p. 53). (Emphasis ours).

- ARBITRATOR RUSTMANN: ...and **I know** there are different types of purchase orders that can be issued. (Ex. 2: 3/23/09 Tr., p. 54). (Emphasis ours).

- ARBITRATOR RUSTMANN: **I know** that purchase order is generally issue [sic] at some point. I mean you'll get like a letter – a sourcing that says okay you've got the award and then the purchase order is generally issued sometime later in the process. But it's that sourcing award letter that's really oh we've got the business **in my experience?** (Ex. 2: 3/23/09 Tr., p. 63). (Emphasis ours).

- ARBITRATOR RUSTMANN: I**'ve seen different scenarios of different purchase orders. I've seen purchase orders that are requirements contracts** that say you are the sole source and I shall buy **100 percent** of **my requirements** of this from you and then **releases** are issued and every time I've seen it the customer reserves the right to terminate for convenience and is only **bound to releases that were actually issued.**

  MS. VALENTINE: I've never seen a one that says for convenience. I've seen them where they've said for something else, failure.

  ARBITRATOR RUSTMANN: They all say for convenience. Every **contract in the auto industry said we can terminate this for convenience** and if we do our **only obligation is to buy eight weeks'** worth of releases from you.

  MR. VALENTINE: You know, we don't' have that in this case, Dan, and that's not part of the evidence that's here. (Ex. 20: 3/25/09 Tr., pp. 264-267). (Emphasis ours).

- ARBITRATOR RUSTMAN: ...Now, **I'm an automotive attorney. I litigate the issue all the time.** I cannot take one of these contracts on behalf of a supplier and such the purchaser and say, "You have to purchase this from me, you cannot terminate it," unless it was for a fixed term, which is what Johnson described was the prior arrangement. There used to be a one-year contact where it said, "purchase my requirements for this one-year." (Ex. 21: 4/14/10 Tr., pp. 25-26). (Emphasis ours).

  And, even during the testimony of Standex's own Johnson, the drafter of the

agreement, Arbitrator Rustmann "testified." This time he duplicitously planted the concept of

long-term agreements (LTA) into the proceeding and into the definition of "orders booked," even though Johnson testified he was not involved in any LTA while at Standex:

> [RUSTMANN]  Do you remember any times in the later years, I know you were only there until 01, but were you ever involved – would Standex ever get involved in an LTA or LSA, long-term agreement that after the release system went in?
>
> [JOHNSON]  Not to my knowledge, I don't know whether they do or not, I don't stay in touch....
>
> **ARBITRATOR RUSTMANN:**  I guess maybe it's different in different types of parts, **but I'm familiar with some circumstances** where, for example, the customer will say, you know, or the manufacturer will go on and say, Jeez, I've got to put a one much [sic] of front-end costs on this I got to buy all different kinds of capital equipment and unless you commit to give me the orders for a period of two years or three years, I'm not going to invest that capital.  So then you would negotiate a **long-term agreement** that would say okay this is the price and this is going to be it for three years and then you come back and negotiate it again.
>
> MS. VALENTINE:  Is that a question?  (Ex. 2: 3/23/09 Trans, pp. 121-122).  (Emphasis ours).

**D.   THE EXCLUDED EVIDENCE:**

(i).   Law:

"Vacatur is appropriate when the exclusion of relevant evidence 'so affects the rights of a party that it may be said that he was deprived of a fair hearing.'"  *Hoteles Condado Beach, La Concha and Convention Ctr. v. Union de Tronquistas Local 901*, 763 F. 2d 34, 39-40 (1st Cir. 1985). This is because "the arbitrator is not bound to hear all of the evidence tendered by the parties; however, **he must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments.**" *Id.* at 39.  *Salei v. Shearson Lehman Bros.*, 1996 U.S. Dist. LEXIS 7620 *13 (E.D. Mich. 1996). (Emphasis ours).

**(ii).    The Majority Failed To Follow Their Own Procedures:**

**(a).    Summary Judgment:**

At the 5/20/09 evidentiary hearing, Arbitrators Rustmann and Webster:

(1) confirmed on the record that Urban would **not** be foreclosed from having a subsequent hearing or from presenting evidence on the Rustmann-invented-issue of long-term agreements; and

(2) reassured Urban that summary disposition would not be granted on this issue.  In fact, Arbitrator Rustmann specifically instructed Urban to only "bullet point" (Ex. 8: Trans 5/20/09, p. 106) documents that demonstrated an LTA and indicated that after submission, "we may order additional documents to be produced." (Ex. 8: 5/20/09 Tr., p. 102).

Once Standex's counsel indicated he may attempt to get a summary disposition, Urban's counsel indicated they did not want to proceed on that basis and give up the right to a hearing, which would include the ability to examine witnesses and representatives of suppliers. After having previously been foreclosed from presenting evidence setting forth its case as directed in the 5/11/09 Majority Opinion (Ex. 7) or Arbitration Agreement (Ex. 6), Urban's counsel tried to present a method of proceeding within those confines:

> MR. VALENTINE:  My understanding is that we are going to go through, identify the relevant parts, and we are going to put together the documentation with regard to those.  We are going to establish from our contention [sic] standpoint fixed term requirement agreements, and try to quantify it, and try to give the panel the claimed commissions on that.
>
> ARBITRATOR WEBSTER: Yeah.
>
> MR. VALENTINE:  My understanding is that Mike is going to take a look at that, and he is going to say, yeah, nay, or maybe.  I think it is going to be nay, **and then we are going to have the hearings and evidentiary hearings with regard to narrowing it down so that the panel can make its decision.  Have I got it right?**
>
> MR. BARTON:  My brief, though, I can I [sic] request if I don't think there's a fact question on any of them, that the panel rules as a matter of law with

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5767 WEST MAPLE RD
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

respect to some of the blankets. And the panel will make a decision on the other ones.

ARBITRATOR WEBSTER: Right.

ARBITRATOR RUSTMANN: **And if there are issues regarding documents such as you say, here is my documents that I have that show me this is a long-term fixed requirements contract, but I need more to prove my case in that, then say that, and, you know, we may order additional documents produced.**

MS. VALENTINE: I wouldn't have to say that until -- if he says something. **That's why I don't want to foreclose myself from having somebody come in and testify to it.** I just don't see how you can do this.

ARBITRATOR WEBSTER: **You are not foreclosing [sic].**

MS. VALENTINE: **Okay. So it is not --**

ARBITRATOR WEBSTER: We, as Stephen said, are trying to narrow it down, make it simple.

ARBITRATOR RUSTMANN: It is kind of like an offer of proof, I guess.

MS. VALENTINE: Okay. (Ex. 8: 5/20/09 Tr., pp. 101-102). (Emphasis ours).

Yet, despite these assurances and the wealth of evidence establishing the existence of long-term agreements with numerous customers (including, but not limited to, ASMO, ABC, Delphi and TRW), which was cited in Urban's brief, the Marjority denied Urban the opportunity to present relevant evidence. On November 9, 2009, the Majority ruled that Urban was ONLY allowed to proceed on two parts for **TRW**:

> 3.   Decided that the **only** contract that could potentially be deemed to be a "long term agreement (fixed term requirement contract)" under the panels' prior order was the TRW contract regarding Part Nos. 152943-1 and 152944-1, and the panel will conduct another evidentiary hearing to accept further proofs with respect to the negotiations and Purchase Order for these two TRW parts only, to decide if a binding long term agreement for these two parts was in fact entered into, and, if so, whether any post

termination commissions are owing with respect to these two TRW parts (Arbitrator Lauck dissenting). (Ex. 11, p. 2). (Emphasis ours).

This 11/09/09 Opinion is another example of the Majority's failure to follow its own rulings; this Opinion:

- completely ignored the Majority's previous instruction to submit only "bullet point evidence;"

- completely ignored the extensive evidence set forth in Urban's brief establishing other customer's LTAs;

- totally foreclosed Urban from presenting evidence and testimony on the issue of LTAs; and

- deprived Urban of its right to a fundamentally fair hearing on the issues.

### (b).   Rebuttal Expert:

An understanding of the automotive industry, its terms and the workings of this specialized field was imperative to the administration of justice in this case, especially since the definition of "orders booked" kept changing and the bar Urban needed to establish liability kept rising.  To assist with these issues, on 9/25/09, Urban attached to its brief the Affidavit of Expert Peter Rosenfeld (Ex. 10), who Urban intended to call as an expert rebuttal witness and who was part of the White House Automotive Task Force.  Standex, however, moved to strike this expert.  There was never any argument that Mr. Rosenfeld was unqualified as an expert; yet, on 11/9/09, the Majority"[d]ecided that Defendant's Motion to Strike new Unlisted Witness (Rosenfeld) is Granted (Arbitrator Lauck dissenting.)"  (Ex. 11).  The Majority made this ruling contrary to:

- Mr. Rosenfeld's expert opinion, which essentially refuted Arbitrator Rustmann's "testimony" and definition and redefinition of "orders booked";

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.
5757 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

- the plain language of the stipulation of the parties which specifically allows a party to call "unanticipated rebuttal witnesses to the extent authorized by FRCP and federal rules of evidence"; (Ex. 6, ¶8)

- Urban's Expert Witness List dated March 9, 2005, which specifically states: "Any and all necessary rebuttal experts."; (ii) Urban's First Supplemental Witness List and Expert Witness List dated May 14, 2005 specifically states: "Any and all necessary rebuttal expert(s);" and

- the legal authority that states "[T]he fact that it [evidence] might have been offered in chief does not preclude its admission in rebuttal." *Benedict v. U.S.,* 822 F. 2d 1426, 1428 (6th Cir. 1987) quoting *Martin v. Weaver,* 666 F. 2d 1013 (6th Cir .1981). "[T]he plaintiff has no duty to anticipate or to negate a defense theory in Plaintiff's case-in-chief." *Benedict,* supra.

   (c).   **Deprived Discovery:**

   Throughout the proceeding, the Majority not only condoned Standex's failure to provide all of the required information, but again failed to follow their own Orders.

   Urban raised the issue of Standex's failure to produce discovery on many occasions, including in Urban's counsel's letter of 12/28/10. (Ex. 22). At the 1/11/11 hearing, this latest issue of discovery was raised as a result of <u>Standex's **attorney ADMITTING**</u> in letters dated 12/20/10 and 12/22/10 to Urban's counsel <u>**that Standex had not provided all of the**</u> <u>**DISCOVERY INFORMATION**</u> it was required to provide relating to sales to China on the TRW long-term agreement at issue. (Ex. 23 and 24). Throughout the proceedings, Urban sought continuing sales information from Standex, including, but not limited to, TRW sales. Standex's admission was IN VIOLATION OF INTERROGATORIES IT SIGNED IN THIS MATTER and the STIPULATION TO ARBITRATE, which required that "Standex shall continue to provide Urban

with all supplemental sales information on the parts at issue including the parts listed in the subsequent paragraph which information may also be used." (Ex. 6).[14]

When Standex's violation of the Stipulation was brought to the Panel's attention at the 1/11/11 hearing, the Panel subsequently ruled that Standex was required to produce **all** of the discovery information with regard to the TRW business.

> ARBITRATOR WEBSTER:  I just raised a question.  Why don't we make a special record of the damages that are at issue here, the China -- I'll call them China damages -- and just have that there for appellate purposes.  I mean, this obviously is going to go somewhere.
>
> MR. BARTON:  Sure.
>
> ARBITRATOR WEBSTER:  So why don't you do that.
>
> ARBITRATOR LAUCK:  **Not a summary.  Give them the documents that you have to show the sales.**
>
> MR. BARTON:  I'll give it to them, if that's the ruling of the panel.
>
> ARBITRATOR WEBSTER:  I think just so it's there, and if we're wrong, why, you've got it.
>
> ARBITRATOR RUSTMANN:  Just submit it to the panel.
>
> MR. BARTON:  Yes, copies of them.
>
> ARBITRATOR LAUCK:  And to opposing counsel.
>
> MR. BARTON:  Yes.
>
> ARBITRATOR WEBSTER:  **And again, if there's some objection to what he's submitted, why, we'll hear that.**  (Ex. 17:  1/12/11 Tr., pp. 49-50).  (Emphasis ours).

---

[14] In addition, pursuant to the Stipulation to Arbitrate, ¶12, these are parts that Standex was specifically required to provide additional discovery information.

On or about 1/14/11, however, Standex's unilaterally decided to produce sales figures **without** any backup of any kind as required by the Panel. Standex provided no supporting Purchase Orders, invoices, shipping releases, emails, Global Supply Agreement, Long Term Agreements and any other documents that show the specifics of the sales at issue.

On 2/24/11, Arbitrator Rustmann, again took control and deemed sufficient the produced summary of China sales. (Ex. 25; Lauck Dissenting). The latest ruling completely contradicted the Panel's earlier ruling at the 1/12/11 hearing, which required Standex to **produce all** the "China" sales documents, not just a summary. (Ex. 17: 1/12/11 Tr., pp. 49-50). And, once again, Standex's got away with a blatant and total disregard for this Panel's ruling, the Federal Rules of Civil Procedure, answers to interrogatories and Stipulation to Arbitrate, etc. The supporting sales information was essential to Urban's claim, as limited by the Majority.

**E.      PREDISPOSED ARBITRATORS**

The parties agreed that this arbitration would be by a panel of three arbitrators, with each party choosing a non-neutral arbitrator and a neutral being seated. Yet, the proceedings in this case have not been fair or neutral.

Early in the proceedings, a statement was made by the Majority to the effect that despite the ruling of the COA the trial court got it right when it ruled as it did. This statement was made prior to the proofs being presented and shows a prejudgment by those Arbitrators that would deprive Urban of a fair and unbiased arbitration proceeding. The Majority's determination that the Agreement was unambiguous establishes prejudice.

Arbitrator Webster stated on the record to Urban's counsel that:

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5767 WEST MAPLE RD
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

5767 WEST MAPLE RD
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010

ARBITRATOR WEBSTER: You stipulated that we did not have to give you a reason for award, that might have been a dangerous thing. (Ex. 20: 3/25/09 Tr., p. 276).

Indeed, it was a very dangerous thing. It is clear the rules of law were not followed and the Majority "imposed their own brand of industrial justice."

Arbitrator Rustmann not only took control over these proceedings; he also "testified," drafted the Opinions (a task that, in the undersigned's experience, has been done by the neutral); and kept redefining and reinterpreting his own invented definitions.

It is more than clear that Arbitrator Rustmann authored the issued opinions.

- ARBITRATOR RUSTMANN: And you can smirk at me, Ms. Valentine, but I am telling you what **my intent** was in **my order**, and you are quibbling with me over the intent of language **I wrote**. And I am telling you what **my intent** was. I am not going to sit here and listen to days of testimony on blanket purchase orders that **I don't consider to be long-term agreements, fixed term requirements contracts.** (Ex. 8: 5/20/09 Tr., p. 53). (Emphasis ours).

Arbitrator Rustmann also made the following statements on the record:

- "[W]hat I ordered . . ." (Ex. 8: 5/20/09 Tr., p. 46). (Emphasis ours).

- "I mean, that was not my intent in the order..." (Ex. 8: 5/20/09 Tr., p. 46). (Emphasis ours).

- "[M]y interpretation . . ." (Ex. 8: 5/20/09 Tr., p. 47). (Emphasis ours).

- "this is what **my basis of my order** was when **I signed off on the order.** That's **my intent"** (Ex. 8: 5/20/09 Tr., p. 49). (Emphasis ours).

- "**I thought** that it was pretty clearly expressed in **my opinion that I wrote here.**" (Ex. 8: 5/20/09 Tr., p. 50). (Emphasis ours).

- "So my interpretation, and I wrote the language, I mean, that was my decision to put into the order the language that said fixed term agreements, long-term agreements, fixed term requirements contracts. I did not understand that the blanket   orders were, based on this testimony, long-term agreements. And I was looking for the testimony -- I remember asking Mr. Urban, were there any long-term

agreements that were binding that were for a fixed term? And I think he said, I don't know, I don't think so. But I have to check. **That's why I put that in.** If there were, then he is entitled to commissions on them. These types of orders that we are seeing that were testified to where there was a blanket purchase order and a release are not, **in my opinion,** long-term agreements fixed term requirement contracts." (Ex. 8: 5/20/09 Tr., pp. 52-53). (Emphasis ours).

• **"I've been writing the opinions for the majority."** (Ex. 21: 4/14/10 Tr., p. 34). (Emphasis ours).

With the atmosphere created by the Majority, fairness could never be achieved.

## IV. CONCLUSION AND RELIEF REQUESTED

Pursuant to 9 U.S.C. §10 and based on the facts and law contained in this Brief this Honorable Court should vacate the Opinions/Orders and the 4/14/11 "Final Award" issued by the Majority.

Further, based on the evidence in the record, this Court should enter an order awarding Plaintiff life of part/life of product commissions on the relevant parts as presented in the arbitration proceedings and order an accounting and payment of those commissions.

Alternatively, this Court should remand this matter for arbitration proceedings before a new arbitration panel.

Respectfully submitted,

VALENTINE & ASSOCIATES, P.C.

By: /s/Victoria A. Valentine
    Victoria A. Valentine (P58546)
    Stephen K. Valentine, Jr. (P21697)
    Attorneys for Plaintiff
    5767 W. Maple Road, Suite 400
    West Bloomfield, MI 48322
    (248) 851-3010 / (248) 851-1553
    *valulaw@ameritech.net*
    *vav@ameritech.net*

DATED: July 6, 2011

LAW OFFICES
VALENTINE & ASSOCIATES, P.C.

5767 WEST MAPLE RD.
SUITE 400
WEST BLOOMFIELD, MI 48322
(248) 851-3010