UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

URBAN ASSOCIATES, INC.,

        Plaintiff,                                    Civil Case No.
vs.                                                  04-CV-40059

STANDEX ELECTRONICS, INC. and                HON. MARK A. GOLDSMITH
STANDEX INTERNATIONAL CORP.,

        Defendants.
_____/

**OPINION AND ORDER (1) ACCEPTING AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND (2) DENYING PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD**

**I. Introduction**

Before the Court is Plaintiff's motion to vacate an arbitration award. The matter was referred to Magistrate Judge Paul J. Komives, who issued a report and recommendation ("R&R") on February 17, 2012, recommending that the motion be denied (Dkt. 84). Plaintiff filed an objection to the R&R (Dkt. 85), and the matter is fully briefed. For the reasons that follow, the Court accepts and adopts the R&R and denies Plaintiff's motion (Dkt. 71).

**II. Background**

As the Magistrate Judge noted in the R&R, the factual and procedural background to this matter have been set forth in detail in the Sixth Circuit opinion reversing, in part, the grant of summary judgment by the Hon. Paul Gadola, the District Judge previously assigned to this case. See Urban Assocs., Inc. v. Stadex Elect., Inc., 216 Fed. App'x 495, 497-501 (6th Cir. 2007). The R&R excerpts the relevant portions of the Sixth Circuit's opinion, which need not be repeated here. The R&R also details the subsequent arbitration proceeding. In short, the Sixth

1

Circuit held that the term "orders booked" in the parties' agreement regarding commissions owing to Plaintiff was ambiguous and did not, as a matter of law, unambiguosly refer only to binding commitments to purchase and ship, contrary to Judge Gadola's opinion granting summary judgment in favor of Defendants. Accordingly, the Sixth Circuit held that extrinsic evidence was available to decide between the parties' readings of the contract provision. Id. at 506-509. Based on the extrinsic evidence submitted in the case, the Sixth Circuit concluded that Plaintiff "presented ample evidence from which a reasonable factfinder could adopt one of its two preferred interpretations of the term." Id.

Subsequently, the parties agreed to submit the matter to binding arbitration, and the case was administratively closed. The arbitration panel was composed of one arbitrator selected by each of the parties and a neutral arbitrator selected by the other two arbitrators. The arbitrators were:

- Frederick Lauck, selected by Plaintiff;
- Daniel Rustmann, selected by Defendant;
- former Oakland County Circuit Court Judge Robert B. Webster, the neutral arbitrator selected by Judge Gadola after the parties were unable to agree on a neutral arbitrator.

As part of the arbitration proceeding, the panel issued a scheduling order requiring Plaintiff to identify a list of contracts for which it contended it was due commissions. Arbitration Scheduling Order (Dkt. 75-10). Plaintiff identified a number of contracts and submitted an affidavit of an expert, Peter Rosenfeld, supporting Plaintiff's contention that the identified contracts should be included under the panel's construction of the agreement. Rosenfeld Aff. (Dkt. 71-10). Defendant filed a motion to strike Rosenfeld and a response brief arguing that the contracts identified by Plaintiff were merely "blanket purchase orders" that did not constitute binding contracts and thus did not satisfy the term "orders booked" under the

panel's construction of the agreement.  Defs.' Resp. Br. at 1-2 (Dkt. 75-12).  On November 9, 2009, a split panel issued an opinion that commissions were not available for all but one of Plaintiff's identified contracts, thus essentially agreeing with Defendants' construction of the agreement.  Arbitration Panel Op. (Dkt. 75-14).  Arbitrators Rustmann and Webster issued the majority opinion, with Arbitrator Lauck dissenting.  Id.  The panel also granted Defendants' motion to strike Rosenfeld's expert report.  Id.  On April 14, 2011, the panel issued its final award.  Arbitration Tr. (Dkt. 75-17).

Since the time Judge Gadola ordered the matter to arbitration in 2008, the case has been reassigned to the undersigned District Judge.  On July 6, 2011, Plaintiff filed a motion (Dkt. 71) to vacate the panel's opinions and orders and its April 14, 2011 final award, pursuant to § 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10.  Following briefing from both parties, the Magistrate Judge issued an R&R, concluding that the arbitration panel's award is not subject to vacatur.

### III. Discussion

#### a. Standard of Review

The Court reviews de novo those portions of the R&R to which a specific objection has been made.  Fed. R. Civ. P. 72(b).  Plaintiff objects to the Magistrate Judge's findings that (i) the arbitration panel majority did not exhibit evident partiality, (ii) Plaintiff was not deprived of a fundamentally fair hearing, and (iii) the panel majority did not exceed or imperfectly execute its powers or otherwise act in manifest disregard of the law.

Under the FAA, which "provides the exclusive remedy for challenging acts that taint an arbitration award," Corey v. N.Y. Stock Exch., 691 F.2d 1205, 1211 (6th Cir. 1982), an award may be vacated:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). An arbitration award may also be vacated if the arbitrator displays "manifest disregard for the law." Merrill Lynch, Pierce, Fenner & Smith Inc., v. Jaros, 70 F.3d 418, 421 (6th Cir. 1995). However, the standard of review of an arbitration award under the FAA is "is very narrow; one of the narrowest standards of judicial review in all of American jurisprudence." Nationwide Mut. Ins. Co. v. Home Ins. Co., 429 F.3d 640, 643 (6th Cir. 2005) (internal quotation marks omitted). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers Int'l Union v. Misco, 484 U.S. 29, 36 (1987). To engage in an extensive review of arbitration awards "would undermine the goal of the arbitration process: to resolve disputes efficiently while avoiding extended litigation." Dawahare v. Spencer, 210 F.3d 666 (6th Cir. 2000).

### b. Partiality

To vacate the arbitration award on partiality grounds under 9 U.S.C. § 10(a)(2), "[t]he alleged partiality must be direct, definite, and capable of demonstration, and the party asserting evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator." Andersons, Inc. v. Horton Farms, Inc., 166 F.3d 308, 329 (6th Cir. 1998) (internal quotations omitted). "It is not enough to demonstrate an amorphous institutional predisposition

4

toward the other side, because that would simply be the appearance-of-bias standard that [the Sixth Circuit has] previously rejected." Uhl v. Komatsu Forklift Co., Ltd., 512 F.3d 294, 307 (6th Cir. 2008).

In its first objection, Plaintiff argues that the Magistrate Judge erred in not vacating the arbitration award on the ground that two of the panel members – Arbitrators Rustmann and Webster – exhibited evident partiality. However, because Plaintiff fails to show that that they acted with an improper motive, the Court overrules Plaintiff's objection.

Plaintiff argues that Arbitrator Rustmann's partiality is exhibited by his reliance on past professional experiences in dealing with automotive supplier litigation. Obj. at 4. Plaintiff asserts that where, as here, arbitration is meant to determine the intent of the parties in entering a contract, such professional experience is irrelevant. This argument is unconvincing. When choosing arbitrators, "[t]here is a tradeoff between impartiality and expertise. The expert adjudicator is more likely than a judge or juror . . . to be precommitted to a particular substantive position." Merit Inc. Co. v. Leatherby Ins. Co., 714 F.2d 673, 679 (7th Cir. 1983). Thus, the fact that a party-appointed arbitrator arrives with a point of view from professional experience is not enough to set aside an arbitration decision. Nationwide, 429 F.3d at 645 (citing, Merit, 714 F.2d at 679). Instead, a party must show specific facts indicating improper motive. Id. Furthermore, Plaintiff's argument that professional experience is irrelevant to determining the intent of the parties is puzzling considering that, in this Court and in the arbitration proceeding, both parties relied on expert testimony to determine the industry standard meaning of the term "orders booked." Professional experience is unquestionably relevant to interpreting contracting parties' intent, and the fact that Rustmann relied on professional experience was neither improper nor does it show improper motivation sufficient to justify vacating the arbitration award.

Plaintiff next argues that Arbitrator Rustmann's partiality is demonstrated by his comments regarding the authority, or lack thereof, of the Sixth Circuit's opinion in this matter. Specifically, Plaintiff finds fault in Rustmann's statements "I don't think I am bound by the Court of Appeals' dicta," "[w]e already construed the unambiguous language of the contract," and "I think the agreement, the language is unambiguous." Obj. at 4-5. Plaintiff argues that these statements show a disregard for the Sixth Circuit's determination that the language of the contract was ambiguous as a matter of law. Plaintiff is correct in asserting that the Sixth Circuit held that, under Ohio law, the contract was ambiguous, Urban, 216 F. App'x at 509, and that such holding was binding on the arbitration. However, as discussed below in connection with Plaintiff's third objection, it is not clear that Rustmann's statements were objectionable, given that the Sixth Circuit's ruling concerned the interpretation of the agreement as a matter of law, whereas the arbitration panel was tasked with construing the agreement after considering extrinsic evidence. Furthermore, Plaintiff's argument that Rustmann did not feel bound by the Sixth Circuit's decision still does not relate to Rustmann's motives or show any partiality in favor of Defendant. As discussed above, the standard for partiality is to establish specific facts that indicate improper motive, which Plaintiff simply has not done.

Plaintiff also argues that Arbitrator Rustmann's interpretation of the contract using "invented terms not found in the agreement," acted in "direct contradiction with the Court of Appeals mandate." However, the only mandate from the Court of Appeals is its holding that the contract is ambiguous under Ohio law. No part of that holding dictates how the arbitrators were to interpret the contract, nor does it prohibit them from using words which do not appear in the contract. Indeed, it is unclear how Plaintiff expects an ambiguous contract to be interpreted

6

while using only those ambiguous terms. Plaintiff accuses the arbitration majority of having "preconceived objective[s]," but, again, fails to show an improper motivation.

Finally, Plaintiff argues that Arbitrator Webster exhibited partiality in his decision making, and Plaintiff faults Arbitrator Webster for taking a passive role in the arbitration proceeding. However, Plaintiff ascribes undue significance to Arbitrator Webster's comment that stipulating to accept arbitration without a reason for award "might have been a dangerous thing." The Court concludes that this statement does not remotely suggest partiality. As for Webster's alleged passive role during the proceeding, this, too, has no bearing on partiality.

Accordingly, Plaintiff's arguments wholly fail to show how the panel members were improperly motivated in a way prejudicial to Plaintiff.

### c. Refusal to Hear Evidence

"[V]acatur pursuant to section 10(a)(3) is warranted only where the arbitrator's refusal to hear proffered testimony so affects the rights of a party that it may be said that he was deprived of a fair hearing." Cent. Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 557 (3rd Cir. 2009) (internal quotation marks omitted). "Arbitrators are not bound to hear all the evidence tendered by the parties; they need only afford each party the opportunity to present their arguments and evidence." Terk Tech. Corp. v. Dockery, 86 F. Supp. 2d 706, 709 (E.D. Mich. 2000). Plaintiff argues in its second objection that the Magistrate Judge failed to address "that Plaintiff was precluded from presenting testimony on the Rustmann-invented and reinvented issue of long-term agreements, contrary to representations made by the Arbitrators at the May 20, 2009 hearing." Obj. at 8. Thus, Plaintiff argues that, contrary to 9 U.S.C. § 10(a)(3), the Magistrate Judge erred in finding that the arbitration proceeding was not fundamentally unfair.

7

The Court concludes that Plaintiff was not deprived of an opportunity to present its evidence. At the May 20, 2009 hearing, Plaintiff was given the opportunity to establish a prima facie case that it had made contracts meeting the definition of "orders booked." Plaintiff was allowed to submit briefs and documents supporting its contention, as well as a response to Defendants' brief. In the scheduling order memorializing the briefing schedule, the arbitration panel wrote that "[t]he arbitrators shall meet to discuss the issues at a mutually convenient date and time following completion of the briefing and shall thereafter work with the parties to schedule any additional oral argument or evidentiary hearing they may decide is required." Arbitration Scheduling Order (Dkt. 75-10). Taking Plaintiff's and Defendants' briefs into consideration, the panel majority concluded that only one contract established a prima facie case for meeting the definition of "orders booked." Arbitration Panel Op. (Dkt. 75-14). In so finding, the panel majority concluded that evidentiary hearings were not necessary for those contracts for which a prima facie case was not established.

Plaintiff has not shown that its submissions were disregarded. The panel's failure to rule in favor of Plaintiff does not show that the panel failed to consider Plaintiff's evidence. Accordingly, Plaintiff has failed to show how it was deprived of the opportunity to present its evidence.

Next, Plaintiff argues that the panel majority denied Plaintiff a fair hearing by striking its rebuttal witness, Peter Rosenfeld. Plaintiff argues that alleged changes to the interpretation of "orders booked" necessitated a rebuttal witness. However, "rebuttal is a term of art, denoting evidence introduced by a [party] to meet new <u>facts</u> brought out in his opponent's case in chief." <u>Morgan v. Comm. Union Assur. Cos.</u>, 606 F.2d 554, 555 (5th Cir. 1979) (emphasis added). After reviewing the affidavit of Peter Rosenfeld, it is clear that the purpose of his testimony was

8

to support Plaintiff's definition of "orders booked," and not to meet any new facts. Plaintiff points to Arbitrator Rustmann's alleged changes to the definition as creating the need for a rebuttal witness; however, the panel's reinterpretation of the contract terms does not constitute a new fact that would normally counsel for allowing a rebuttal witness. In any case, an arbitration panel, like a trial court, enjoys broad discretion in determining whether to allow testimony. See Terk, 86 F. Supp. 2d at 709 (declining to review arbitrators' decision not to allow a witness where the arbitrators believed her testimony was "not helpful"). Accordingly, the Court concludes that striking this witness did not deprive Plaintiff of a fundamentally fair hearing where Plaintiff was able to present its point of view to the panel through its original briefing.

Finally, Plaintiff argues that the Magistrate Judge failed to address Plaintiff's arguments regarding Defendants' failure to produce discovery. At a hearing on January 12, 2011, the panel required Defendants to produce all discovery, including supporting documentation, related to the two TRW contracts which were determined to meet the definition of "orders booked." On January 14, 2011, Defendants produced sales figures, without any of the supporting documents. On February 24, 2011, however, the panel majority ruled that the discovery produced by Defendants was sufficient. Plaintiff now argues that this ruling, which "completely contradicted the Panel's earlier ruling," shows that Plaintiff was denied a fundamentally fair hearing. Obj. at 11. However, Plaintiff cites no authority for the proposition that an arbitration panel's ruling modifying a prior ruling is evidence of a fundamentally unfair hearing, nor does Plaintiff explain how further discovery would have yielded any changes to the award. Thus, although Plaintiff claims that this panel ruling denied it a fundamentally fair hearing, Plaintiff's claim is, ultimately, conclusory and fails to meet the high standard for vacating an arbitration award.

9

Accordingly, the Court will not vacate the arbitration award on the basis of a refusal to hear evidence or a lack of fundamental fairness.

### d. Exceeding / Imperfectly Executing Powers

The Magistrate Judge described the applicable standard in the R&R:

"Under the manifest-disregard-of-the law standard, [a court] may set aside the arbitrator's decision only if, after applying 'clearly established legal precedent . . . no judge or group of judges could conceivably come to the same determination.'" Ozormoor v. T-Mobile USA, Inc., ___ Fed. App'x ___, ___, 2012 WL 232951, at *2 (6th Cir. Jan. 25, 2012) (quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros, 70 F.3d 418, 421 (6th Cir. 1995)). To constitute a manifest disregard for the law, "[a] mere error in interpretation or application of the law is insufficient. Rather, the decision must fly in the face of clearly established legal precedent." Jaros, 70 F.3d at 421. Thus, an arbitrator acts with manifest disregard if "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." Id.

R&R at 25. Accordingly, the only error for which the Court would find that the arbitration panel acted in manifest disregard of the law is an error that is "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." M & C Corp. v. Erwin Behr GmbH & Co., KG, 87 F.3d 844, 851 (6th Cir. 1996) (quoting Merrill Lynch, 808 F.2d at 933). Plaintiff argues in its third objection that the Magistrate Judge erred in finding that the panel majority did not act in manifest disregard for the law and that it did not exceed or imperfectly execute its powers, contrary to to 9 U.S.C. § 10(a)(4). Plaintiff bases its arguments, in part, on its arguments regarding partiality, discussed above.

Plaintiff's arguments raised under its first objection – regarding (i) Rustmann's basis for interpreting the term "orders booked;" (ii) Rustmann's statements regarding the authority of the Sixth Circuit; (iii) Rustmann's use of terms not appearing in the contract; and (iv) Webster's statements and passivity – fail to support vacatur here. Plaintiff argues that Arbitrator Rustmann's definition of "orders booked" "is not supported by the objective evidence." Obj. at

12. However, Plaintiff does not explain how Arbitrator Rustmann's definition of "orders booked" exhibits disregard for the law.

With respect to Rustmann's statements regarding the authority of the Sixth Circuit, the argument that these statements manifest a disregard for the law is unconvincing. The only binding ruling from the Sixth Circuit was that the term "orders booked" was not unambiguous as a matter of law. The Sixth Circuit did not mandate any particular interpretation of the contract. To that end, the panel majority interpreted the contract in the way it saw appropriate. Indeed, that the panel engaged in evidentiary hearings to determine the term's interpretation shows that it followed the Sixth Circuit's ruling that the term could not be decided as a matter of law. Similarly, Plaintiff's argument that the panel majority opinion was "contrary to the law of the case" is not persuasive. At no point does the Sixth Circuit's opinion conclude that any one particular interpretation must or must not be used as a matter of law. The arbitration panel's interpretation of "orders booked" was not restricted by the Sixth Circuit. Thus, the panel's use of terms outside the four corners of the agreement does not demonstrate a manifest disregard for the law. Finally, as the Court concluded with respect to partiality, Webster's statements and passivity do not evidence a manifest disregard for the law.

In addition, Plaintiff argues that the arbitration majority showed a manifest disregard for the law by not strictly construing the agreement against Defendants. Plaintiff's argument here appears to amount to a demand that ambiguous contracts be defined by the non-drafting party. However, as the R&R explains:

> This rule . . . is merely one aid in construing an ambiguous contract; it does not preclude a finder of fact from construing the contract in the drafting party's favor where the extrinsic evidence and other rules of contract construction support the conclusion that the drafting party's construction better reflects the intent of the parties. As the Ohio Court of Appeals has observed, "[t]he general rule of construing an ambiguous contract against the drafter does not

11

> mean automatically holding in favor of the other party . . . ." Rather, this rule of construction is merely a guiding principle the court uses in determining the parties' intent after viewing the extrinsic evidence presented by the parties. Otherwise, extrinsic evidence would be irrelevant." Beverly v. Parilla, 848 N.E.2d 881, 887 (Ohio Ct. App. 2006) (citation omitted).

R&R at 28. Although Plaintiff argues that the testimony of Charles Johnson "only added to the ambiguity," Johnson did in fact testify, consistent with Defendants' position, that in the 1990s, "order booked" had a commonly understood meaning of "binding commitment to purchase." See Def.'s Br. Ex. 4 at 135:18-24. The Court finds that sufficient evidence exists for a judge to come to the same conclusions as the panel majority.

Taken individually, and considered as a whole, the arguments advanced by Plaintiff fail to demonstrate that the panel majority manifested a disregard for the law. Accordingly, this objection is overruled.

## IV.  CONCLUSION

For the reasons given above, Plaintiff's Objections to the R&R are overruled. The Court accepts and adopts the Magistrate Judge's R&R (Dkt. 84) as the findings and conclusions of the Court. Plaintiff's motion to vacate the arbitration award (Dkt. 71) is denied.

SO ORDERED.

Dated:  March 30, 2012  
 Flint, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2012.

s/Deborah J. Goltz  
DEBORAH J. GOLTZ  
Case Manager